

# NUMBER 13-21-00109-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **LARRY MARK POLSKY, ESQ.,** | **Appellant,** |
| **v.** | |
| **SHERIFF ERIC GARZA AND CAMERON COUNTY,** | **Appellees.** |

### On appeal from the 445th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña**
**Memorandum Opinion by Justice Silva**

Appellant Larry Mark Polsky, Esq. appeals the trial court's order affirming Cameron County Sheriff Eric Garza (the Sheriff) and Cameron County's (the County) denial of his application for a sexually oriented business (SOB) license. By ten issues, which we

construe as one, Polsky argues the County's decision was not supported by substantial evidence. The primary consideration in this appeal is whether substantial evidence supports the Cameron County Commissioners' Court (the Commissioners) determination that a public beach neighboring Polsky's property constitutes a "public park." We affirm.

## I. BACKGROUND

Polsky applied for an SOB license with the Sheriff pursuant to the County's regulations. *See* Cameron County, Tex., Regulations for Sexually-Oriented Businesses Operating within Unincorporated Areas of the County (Dec. 21, 2004) (County SOB Regulations). Several interested parties objected to Polsky's application via letter or email, prompting the Commissioners to hold a public hearing. Among the complaints received was that the proposed location was near beach access and immediately next to a public beach frequented by children, teenagers, and adults. During the public hearing, some of the interested parties explained that "literally thousands of families" access and use the beach adjacent to Polsky's proposed SOB location, which is located several miles north of the city of South Padre Island.

Following the hearing, the Commissioners issued a statement finding that "[t]he public beach, which is within 1,500 feet of [Polsky]'s property[,] is a public park, not owned by [the County] but dedicated to public use by dedication and implication and used for recreation, swimming, fishing, sunbathing[,] and family uses since time immemorial." Based on this finding, the Sheriff Omar Lucio denied Polsky's SOB application.[1] Polsky

---

[1] Omar Lucio was the Cameron County Sheriff at the time of Polsky's application and the administrative denial. However, Lucio's term expired on December 31, 2020, and Sheriff Garza was properly substituted in as a party prior to this appeal.

2

appealed the denial to the Commissioners, and after an evidentiary hearing, the Commissioners affirmed the Sheriff's denial of the SOB license. Polsky then sought judicial review with a district court in Cameron County, which ultimately upheld the denial.[2] This appeal follows.

## II.    APPLICABLE LAW

The Texas Legislature delegated its legislative authority to regulate SOBs to local governments. *See* TEX. GOV'T CODE ANN. § 243.003(a). County commissioners have authority to regulate SOBs outside the corporate limits of a municipality. *Id.* § 243.003(c). In accordance with this delegated authority, the County adopted regulations that prohibit an SOB from operating within 1,500 feet of a public park. County SOB Regulations § X(k)(4)(i); *see* TEX. GOV'T CODE ANN. § 243.006(a)(2) (permitting a county to prohibit a SOB from being operated within a certain distance of various places). The County SOB Regulations defined a "public park" as "any tract of land dedicated for public use and accessible to the general public for recreational purposes, including locations owned by non-profit organizations that provide educational and recreational facilities but not including public roads, walkways, easements, and rights of way." County SOB Regulations § V(gg).

> "Public beach" means any beach area, whether publicly or privately owned, extending inland from the line of mean low tide to the line of vegetation bordering on the Gulf of Mexico to which the public has acquired the right of use or easement to or over the area by prescription, dedication,

---

[2] The district court originally affirmed the Commissioners' decision, applying an abuse of discretion standard. *See Polsky v. Lucio*, No. 13-19-00062-CV, 2020 WL 6073264, at *2 (Tex. App.—Corpus Christi–Edinburg Sept. 24, 2020, no pet.) (mem. op.). Polsky appealed and we reversed, concluding that the correct standard of review was "substantial evidence." *Id.* at *2–3. On remand, the district court applied the substantial evidence standard and again upheld the Commissioners' decision. It is from this decision that Polsky appeals.

presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom.

TEX. NAT. RES. CODE ANN. § 61.001.

### III.      STANDARD OF REVIEW

When a county undertakes the permitting or licensing of SOBs, it does so in an administrative capacity. *A.H.D. Hous., Inc. v. City of Houston*, 316 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Polsky v. Lucio*, No. 13-19-00062-CV, 2020 WL 6073264, at *2 (Tex. App.—Corpus Christi–Edinburg Sept. 24, 2020, no pet.) (mem. op.). As with State agency administrative decisions, a county's decision to permit or deny an SOB is reviewed under the "substantial evidence" standard. *A.H.D. Hous.*, 316 S.W.3d at 217.

A review under the substantial evidence standard is a limited one that requires only more than a scintilla of evidence to support the county's decision. *Edinburg Consol. Indep. Sch. Dist. v. Esparza*, 603 S.W.3d 468, 478 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.). "Essentially, this is a rational-basis test to determine, as a matter of law, whether [the Commissioners'] order finds reasonable support in the record." *Id.* (quoting *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.)). Whether the Commissioners' determination meets the substantial evidence standard is a question of law. *Id.* Our concern centers on whether the Commissioners' decision was reasonable, not whether it was correct. *Id.* (citing *Jenkins*, 537 S.W.3d at 149). "In our review of the district court's judgment, we focus, as did the district court, on the decision of the [Commissioners]." *Id.* at 447. "[A court] cannot strike down an administrative order on the ground that the evidence heard by the [c]ourt indicated that a

4

more equitable one could be entered." *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 604 (Tex. App.—Austin 2000, pet. denied) (quoting *R.R. Comm'n v. Mackhank Petrol. Co.*, 190 S.W.2d 802, 804 (Tex. 1945)).

Just as we review a county's administrative decision under the same standard as a state agency decision, we also apply the same deference to the Commissioners' interpretation of its rules. *See BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*, 93 S.W.3d 570, 575–76 (Tex. App.—Austin 2002, pet. denied) ("Because it represents the view of the regulatory body that drafted and administers the rule, the agency interpretation actually becomes a part of the rule itself."). In that vein, we generally construe regulations in the same manner as statutes, but where there is ambiguity or room for policy determinations, we will defer to the Commissioners' interpretation "unless it is plainly erroneous or inconsistent with the language of the rule." *Id.* at 575. "In determining whether an agency interpretation of a regulation is reasonable, we cannot consider the regulation in isolation, but must consider how the regulation operates within the regulatory and statutory framework as a whole." *Combined Specialty Ins. Co. v. Deese*, 266 S.W.3d 653, 661 (Tex. App.—Dallas 2008, no pet.) (citing *Tenn. Gas Pipeline Co. v. Rylander*, 80 S.W.3d 200, 205 (Tex. App.—Austin 2002, pet. denied)).

## IV. ANALYSIS

The evidence presented to the Sheriff and Commissioners demonstrated that the public beach adjacent to Polsky's land was frequently and consistently used by the public for recreational purposes.[3] *See* Tex. Nat. Res. Code Ann. § 61.001 (definition of "public

---

[3] We note that Polsky does not contest the determinations the area in question is a public beach,

beach"). The County, interpreting and applying its definition of "public park," then concluded that the public beach fits within that definition. *See BFI Waste Sys. of N. Am.*, 93 S.W.3d at 575. Giving deference to the County for its interpretation, we conclude that its interpretation was reasonable. *See id.* Accordingly, the County's denial of Polsky's SOB license was supported by substantial evidence. *See A.H.D. Hous.*, 316 S.W.3d at 217.

Polsky, however, ignores the definition of "public park" utilized by the County. *See* County SOB Regulations § V(gg) (defining "public park" as "*any* tract of land dedicated for public use and accessible to the general public for recreational purposes") (emphasis added). Instead, Polsky advocates for the utilization of what he maintains is the common use of the word "public park"—i.e., a tract of land owned by some governmental unit and formally and officially designated. Polsky argues that a variety of statutory authority and case law support his position that the public beach could not be a public park, and we address them in turn.

First, Polsky argues that the public beach cannot be a public park because it is not owned by a governmental unit or political subdivision. Polsky provides no legal authority in support, *see* TEX. R. APP. P. 38.1(i), pointing only to the testimony of Richard Molina, Chief Administrator of the Cameron County Appraisal District for support. However, Molina never testified that to be a public park as defined by the County SOB Regulations, or otherwise, a tract of land must be owned by a governmental unit or political subdivision. Moreover, as previously noted, the definition of public park encompasses "any tract of

is within 1,500 feet of his proposed site, and that it is used for recreational purposes.

land . . ."—*not* "any tract of land owned by a governmental unit or political subdivision." *See* County SOB Regulations § V(gg).

Polsky also contends that Texas Transportation Code § 542.325(5) designates a beach as a "roadway" and because the County SOB Regulations exclude roadways from the definition of a "public park," the public beach at issue cannot then be a "public park." *See* TEX. TRANS. CODE ANN. § 542.325(5). However, the transportation code does not say what Polsky claims. *See id.* Section 542.325(5) creates no such designation, rather, it merely imposes a fifteen mile-per-hour speed limit on beaches. *See id.* The mere fact that a beach is subject to a speed limit does not make it a "roadway" as contemplated by the County SOB Regulations. *See* County SOB Regulations§ V(gg).

According to Polsky, for a tract of land to be a public park, it must have a quantifiable geographical area, an entrance, hours of operation, a name, and amenities. However, Polsky provides no authority to support this proposition and we find none, s*ee* TEX. R. APP. P. 38.1(i), and nothing in the County SOB Regulations evinces such a requirement. *See* County SOB Regulations§ V(gg).

Polsky additionally relies on *Lohec v. Galveston County* for support that the public beach cannot be a public park. 841 S.W.2d 361 (Tex. 1992). *Lohec* considered whether the Galveston County Beach Park Board of Trustees possessed the authority to make purchases without its county auditor's approval or oversight. *Id.* at 362. Analyzing Chapter 62 of the Texas Natural Resources Code—which allows a county to establish a beach park board of trustees and sets forth the powers and duties of such a board—the court concluded that a beach park board of trustees was subject to oversight by the county

commissioner. *Id.* at 366–67; *see* TEX. NAT. RES. CODE ANN. §§ 62.001–.163 (statutes applicable to beach park boards of trustees). However, *Lohec* did not, as Polsky argues, pertain to a county's designation of public beaches as public parks or the regulation SOBs. *See Lohec*, 841 S.W.2d at 366–67. Nor does Chapter 62 of the natural resources code. *See* TEX. NAT. RES. CODE ANN. §§ 62.001–.163.

Polsky further cites to Texas Natural Resources Code § 61.161, asserting that it does not provide the county with authority to designate the public beach in front of his property as a public park. *See* TEX. NAT. RES. CODE ANN. § 61.161. However, § 61.161 neither permits nor restricts a county's authority to make any such designation; rather, it establishes a public policy that public beaches "shall be used primarily for recreational purposes" and any use that "substantially interferes with the enjoyment of the beach area by the public shall constitute an offense against the public policy of the state." *Id.*

Polsky argues that, although a private owner may dedicate land for public use, the owners of the beach properties did not do so, as evidenced by the fact that they continued to pay property taxes on the lots. Polsky relies on *Owens v. Hockett* to support his argument. 251 S.W.2d 957 (Tex. 1952). In *Owens*, the Texas Supreme Court upheld a jury finding that Hockett, a landowner, had dedicated his land for public use in the form of a public roadway that was maintained by the county. *Id.* at 958–59. In making its determination, the court relied on a Vermont case, observing that "the act of throwing open the property to the public use, without any other formality, is sufficient to establish the fact of a dedication to the public." *Id.* at 958 (citing *Abbott v. Mills*, 3 Vt. 521, 527 (1831)). *Owens* does not address whether Hockett continued to pay property taxes on

8

the portion of his land that was found to have been dedicated to public use, but there is no dispute that he maintained title over the property. *Id.* at 958–59. Nor does *Owens* involve the dedication of privately owned beaches for public use. *Id.* Further, the court's analysis in *Owens* supports the Commissioners' finding as the evidence here showed the landowners have continuously opened their property to public use. *Id.* at 958.

Lastly, Polsky contends that *Schleuter v. City of Fort Worth*, 947 S.W.2d 920 (Tex. App.—Fort Worth 1997, pet. denied), supports his position that the public beach cannot be a public park under the County SOB Regulations but provides little to no explanation regarding its applicability. *See* TEX. R. APP. P. 38.1(i). We find the case to be inapposite. In *Schleuter*, the Fort Worth Court of Appeals reviewed whether the city's SOB ordinances violated the Texas Equal Rights Amendment, the First Amendment, and were unconstitutionally vague—before ultimately affirming the ordinances' constitutionality. 947 S.W.2d at 923. Yet, Polsky has not presented an argument that the County SOB Regulations violate the Texas Equal Rights Amendment, the First Amendment, or were unconstitutionally vague. Moreover, the definition of "public park" in *Schleuter* differs from the definition before this Court: "any land area dedicated to and/or maintained by the city *for traditional park-like recreational purposes*." *Cf id.* (citing Fort Worth, Tex., City Code app. A, Ord. 3011 § 18A(G)(23)). Thus, we disagree with Polsky that *Schleuter* supports his argument that the public beach cannot be a public park under the County SOB Regulations.

Having reviewed Polsky's individual challenges to the Commissioner's finding, we reiterate our conclusion: because the evidence showed that the public beach adjacent to

9

Polsky's proposed SOB is dedicated for public use and accessible to the general public for recreational purposes, we conclude the Commissioners' finding is supported by substantial evidence. *See A.H.D. Hous.*, 316 S.W.3d at 217. We further conclude the Commissioners' interpretation of "public park" is reasonable and not plainly erroneous or inconsistent with the rule. *See BFI Waste Sys. of N. Am.*, 93 S.W.3d at 575. Finally, the Commissioners' finding is consistent with the statutory and regulatory framework as a whole. *See Deese*, 266 S.W.3d at 661. Therefore, the trial court did not err in affirming the denial of Polsky's SOB application. Polsky's sole issue is overruled.

## V.   CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
20th day of April, 2023.

10